We'll hear argument this morning in Case 18-8369, Lomax v. Ortiz-Marquez. Mr. Burgess. Mr. Chief Justice, and may it please the Court, without prejudice dismissals for failure to state a claim are not strikes under Section 1915G for 3 reasons. First, the statute uses a familiar legal phrase with a well-established meaning in the context relevant here. When they conclusively presume that the phrase dismissed for failure to state a claim means dismissed with prejudice. In 1915G, Congress used the same phrase in the same basic context. There's every reason to think Congress expected courts to apply the phrase's settled meaning rather than to convert ordinary without prejudice dismissals into sanctions that restrict future suits. Second, the structure of the PLRA further supports that interpretation. Read together, the three dismissal categories identified in 1915G target actions that are facially meritless or otherwise abusive. Without prejudice dismissals for failure to state a claim are different. They may be based on purely procedural defects such as the failure to exhaust administrative remedies. And it would be odd to impose a strike for such suits since Congress excluded from 1915G's reach other categories of dismissals that don't implicate the merits or otherwise suggest abuse, such as dismissals based on sovereign immunity. Third and related, the other side's interpretation upsets the PLRA's balance by punishing prisoners for dismissals that by definition say nothing about the ultimate merits of their action. This interpretation frustrates the Act's objective to filter out bad claims while still allowing for consideration of the good since it restricts a prisoner's ability to bring a potentially legitimate claim even after the prisoner has cured a procedural defect. I'd like to start with the text of the statute. The other side's lead argument is that the term dismiss is sufficiently capacious to encompass both dismissals with prejudice or dismissals without prejudice as a dictionary matter. And we don't disagree with that proposition, but we don't think that argument takes adequate account of the full statutory phrase at issue here and the context in which it is being used. Ginsburg. You are assuming that the preclusion question and the IRP status go hand in hand, but it could well be that a dismissal without prejudice will not have preclusive effect, but at the same time, it could mean that you have to pay the filing fee. You seem to be assuming that these two go hand in hand, but that's not necessarily so. I think it's true that they are analytically separable. You could imagine having a consequence in the latter circumstance even if there wouldn't be a preclusion consequence. But the point of our argument is that in the particular context where it is been this phrase is being used in 1915g, where you are looking to the consequence a dismissal has on the ability to bring a future action, the phrase dismissed for failure to state a claim has an established meaning and courts would understand Congress to have meant to signal that the dismissal would be with prejudice, that that is all that's being covered. And we think if you look to the structure of the statute, that further supports that interpretation. As I said at the opening, these dismissals that are being targeted and the other side appears to agree in this briefing are actions that are on their face meritless or otherwise abusive. When you are dealing with a dismissal without prejudice for failure to state a claim, it does not fit into that box because it can be for things that are purely procedural defects that suggest nothing about the merits of the action. And it's conspicuous that Congress excluded other types of dismissals from 1915g that share that feature. I mentioned sovereign immunity. The other side argues that, you know, well, even an action that is dismissed without prejudice could be considered meritless in the relevant sense because it is consuming the court's resources and not getting relief. But it's clear that that's not what Congress had in mind, because if so, there's no explanation for why it excluded things like dismissals based on sovereign immunity from 1915g. Kagan. Mr. Burgess, could you go back to your basic argument from the language? And you're, of course, right that there is a default rule that is used when somebody just says dismissal for a 12b-6 motion. We assume that that's with prejudice as a kind of default rule. But why should we think that Congress, in enacting this language, incorporated that default rule, which is used for a different purpose or at least relied on its use? I mean, this is a different context. Why would Congress have incorporated the default rule into its legislative provision? It is a different context, but we think it's an analogous context, and that in both 1915g and in the preclusion context, you're looking to determine what the effect of a prior dismissal is on a future action. And we think the implication of the other side's approach makes it a very unusual type of without prejudice dismissal. To an ordinary litigant, certainly to a pro se prisoner who's confronted with a dismissal that says this is without prejudice, the ordinary understanding would be that that is not going to limit your ability to bring a future action. Nonetheless, on the other side's interpretation of 1915g has exactly that consequence, because it is imposing a strike that might be a restriction on the ability to bring  So we think 1915g can be used for that purpose. Ginsburg. But I suggest that that's not necessarily so. You can be, as far as a preclusion is concerned, without prejudice, no preclusion. But we're not talking about preclusion. We're talking about a strike that means you have to pay the filing fee. That's right. I think for practical purposes, whether an indigent prisoner is going to have to pay the filing fee ends up overlapping very closely with whether that prisoner is going to be able to bring an action. And that's not just conjecture. Congress recognized that in 1915b, which one of the things that the PLRA did was that it required prisoners to pay, even when they qualified to proceed I.F.P., to pay under installments. But Congress made clear that under that provision, the inability to pay should never be a bar to suits. There's certainly a recognition that whether someone can proceed I.F.P. is often going to be the ballgame for whether they can bring a future suit. I understand your point that there's a different level of blameworthiness, if you would, between frivolous, malicious, and failure to state a claim. On the other hand, 1915 was designed to ease the burden and expense on courts. You have, I think, the marshal doing the service, the time of the court looking at the claim before it can decide that it ought to dismiss. And all that is attendant on the failure to state a claim, even without prejudice, as well as on the others. And the fact is, if you fail to state a claim, you fail to state a claim. You say, well, maybe there's a procedural bar only, and you can repeat. But you have filed a complaint that's not meritorious in the claim, the case. It's not meritorious, even if the underlying claim may be, if you properly plead. So since one of the driving factors was to ease the burden, both in volume and in court time, why shouldn't we at least consider that, rather than entirely the blameworthiness of the filers? I do think it's a relevant consideration, but I think it supports our view of the statute. The other side's argument as to why it's not such a harsh consequence to have a dismissal that's based on procedural grounds without prejudice, or dismissals for insufficient pleading, for example, is there could be repeated opportunities to amend, and that is how the system takes account of it. We think it's equally consistent and perhaps more preferable under the statute for courts to have the option to say, look, as pleaded, this does not state a claim. Rather than continuing to congest the court's dockets, I'm going to dismiss this action, but make it without prejudice. And to the extent that without prejudice dismissal is going to have a consequence. Robertson, My point is the clogging of the dockets, the expense of that has already occurred before the court can say, I'm going to dismiss this action. So to that extent, the impact on the system is the same for the other grounds for denial. I think that's right. Of course, that's also true if an action is dismissed based on sovereign immunity. It's having the same effect, yet it's clear that that is not something that counts as a strike under the statute. So it doesn't seem as though Congress had in mind just something that is filed that needs to be dismissed is going to result in that consequence. District courts also have a great deal of power to determine whether something is going to have that consequence and result in a strike. Of course, they would have the option in the vast majority of cases if they think there's – if there really is no opportunity to amend and succeed, then the dismissal should be with prejudice and there would be a strike under either view. In the category of cases such as actions dismissed based on a HEC bar, where just analytically it is the kind of thing that is dismissed without prejudice, our rule perfectly allows for a district court to nonetheless have a strike in that instance if it – if the court determines that the assertion of the claim despite HEC is frivolous. Sotomayor. Mr. Gergis, turning to that question, sort of two analytically tied questions, to call this as a HEC bar comparable to immunity is one thing, because there you might have an argument that not counting as a strike a lack of jurisdiction, failure to exhaust sovereign immunity, even potentially a HEC bar. Those are all jurisdictional questions. And in my mind, that's an analytically different question than whether a mere dismissal for failure to state a claim without prejudice. That's more, did you do something where you didn't state a particular claim with enough particularity, whether it's immunity, HEC, or failure to exhaust, you're making a legitimate claim. There's another independent ground for not having you come to the court. The failure to state a claim without prejudice, however, is a different statement and a different issue. I thought this case was just about the latter. The question presented addresses only whether a dismissal without prejudice should be counted as a strike. Am I incorrect about that assumption? You're certainly correct about the question presented, but it encompasses both types of dismissals. I think there are two basic categories that would be encompassed in something that is being dismissed for failure to state a claim without prejudice. One is that there is just a pleading deficiency and that the court thinks it's potentially curable, and in some instances you would have an amendment, maybe in other instances the court might just elect to dismiss the claim without prejudice. But there's a separate category that is implicated by the facts of this case where there are certain claims that are treated as being dismissed for failure to state a claim that are necessarily without prejudice because there is some procedural reason that prevents the court from reaching it. And to deal with the exhaustion example, this Court in Jones v. Bach, a case interpreting the PLRA, indicated that in some instances exhaustion would be dealt with under 12b6. You take nothing from the fact that the bio wanted us to reframe this question and to include a question about whether Heck qualified as a dismissal for Heck purposes, which, frankly, there are two sets of splits out there, one on the question presented, whether a dismissal without prejudice or with prejudice should be treated as a strike, and there's a circuit split among the circuits as to whether a Heck dismissal is subject to a strike. We only grant that on the first. That's right. I mean, there are quite a few circuit splits involved in the PLRA that are outstanding. Exactly. So you're asking us. Now, I don't believe that I read anywhere and I purely understand that the litigant here was a pro se litigant below. Yes. You've gotten the record as it is. But I don't think anywhere below he raised the Heck split question. No, that's right. We are taking as a given and it's implicit in the question presented that the dismissal was for failure to state a claim based on Heck. That is how the Tenth Circuit consistently treats Heck dismissals. That is how, in my understanding, the vast majority of circuits treat Heck dismissals as being something for failure to state a claim. So we think this Court should be resolving that question about whether a dismissal for failure to state a claim without prejudice, and it doesn't need to reach the question of whether that's the proper way to characterize Heck. We think it probably is. Heck itself refers to, in terms of whether there's a cognizable claim. It's an unusual circumstance because given the bar, the statute of limitations doesn't begin to accrue for the claim until later. So it is something that is procedural in nature, but nonetheless is often dealt with under the 12B6 standard. Excuse me. On your upset the balance argument of the PLRA, how should we think about Rule 15, leave to amend, which is granted once as a matter of course in response to the response of pleading, and then district judges often have the discretion to grant further leave to amend, which occurred in this case and occurs also in other cases, of course? Sure. I think we have two responses about Rule 15. One is the answer I gave to the Chief Justice earlier, that to the extent their argument is don't worry about dismissals without prejudice because often the judges are going to have multiple opportunities to work with the litigant and he will have a full opportunity to make sure he can state his claim, it's not obvious that that is a better system or more consistent with the PLRA to avoid court congestion. The other answer is that it's not actually clear the extent to which Rule 15 operates in the PLRA context. Most courts of appeals have held that it does. There's one outlier. Suppose that it does, though. Sure. Then it does seem to mitigate some of the unfairness that you talk about that could occur from just routine correction of something in the complaint will usually happen or could happen under Rule 15 and often does happen. It would mitigate the unfairness with respect to just pure pleading deficiencies. Of course, Colorado points to local practices in Colorado about how prisoner complaints are treated. There's no evidence that that is systematically applied across the country and that other district judges or magistrate judges are handling it in that way. But even that approach would not deal with the problem of failure to exhaust being a strike. Because that's not just an issue of allowing or repleading. That's an issue where there is a procedural defect that prevents the court from reaching the merits and something external in the world needs to happen. What's your understanding of how different district courts treat Rule 15 as compared to dismissals without prejudice? Is it your understanding, in other words, that judge in courtroom one will routinely do a dismissal without prejudice, judge in courtroom two will do grant leave to amend over and over again and not dismiss without prejudice? And if that's so, how should we think about that? My general sense is that particularly dealing with prisoner cases, there's not a consistent practice across the board and across the country. And I think that that is a reason to not treat a without prejudice dismissal as being something that can result in a strike because it could be an instance in which it is a curable defect. And in any event, as I said, it's not obvious that it is a better system as far as the PLRA is concerned to force courts into the situation where they need to hold the litigant's hand to have multiple repeat opportunities to amend and keep the case on the docket before there could be a final dismissal. I do want to do What is the standard that a district court applies in deciding whether to dismiss with or without prejudice, and is that enforced on appeal? The general standard, so again, I think there are two categories. If there's an instance in which there's a procedural defect that prevents the court from reaching the merits, it could be a jurisdictional issue, that necessarily has to be without prejudice. In an instance in which the question is whether it's just a pleading issue that could potentially be cured with new facts, I think generally the courts, the way courts deal with it is if there is any ability to, you know, if amendment wouldn't be futile, if there's not, if there's a reason to think you could potentially provide more facts, that that should not be with prejudice. Kagan. And if a court dismisses with prejudice, are there cases in which courts of appeals reverse that on the ground, this should have been done without prejudice? There are, certainly in the category of cases, for example, heck dismissals or things that are But in the other category? They suggest that, I mean, yes, usually it will be in the context of this was not clearly, there should have been an opportunity to cure this, so amendment should have been allowed or at least dismissal should have been without prejudice. I'm just wondering about the incentives that the rule that you're advocating will provide for district courts. In deciding whether to dismiss with prejudice or without prejudice, if they have to take into account, if I dismiss without prejudice, this is going to enable this frequent litigator to continue to file. Do you have any concern that that's going to give them an incentive to label these dismissals with prejudice? No, I don't think so, because I think that would be reversible error if they are without an opportunity to amend and that there is a basis in which the complaint could be reformed to adequately state a claim. So I don't, I don't, I'm not concerned about that consequence. I do think the fact that district courts are the ones handling these cases and have incentives to make sure that the dockets are being appropriately managed is an important one, but it supports our view that, you know, to the extent there's a concern about repeat heck claims, for example, being asserted repeatedly, the district courts have every ability to deal with that by dismissing them as frivolous or malicious in appropriate cases. I'm sorry, Justice Ginsburg. Weren't there successive heck claims here? There were two different heck claims, that's right. So you think the second one should have been dismissed as frivolous? I think the Court would have been within its discretion to potentially dismiss it as frivolous or malicious. Of course, the way 1915g works is that it's looking to what the Court actually did, not what could have been done. That's the significance of the language on the grounds that, that the United States relies on heavily. It indicates that. But it would have been, from the litigation fairness point of view, it would have been appropriate for the district court to say you brought a heck claim once, we dismissed it, and now you did the same thing again, nothing has changed, so it's frivolous, out you go. That would have been an appropriate solution to this case. I think the Court would have been within its discretion to do that. And I think going forward, if there's a clear rule that without prejudice dismissals the failure to state a claim do not result in a strike, in the category of cases like heck that it is analytically something that is going to be without prejudice, courts can deal with that in the appropriate way by recognizing that in some circumstances it might be frivolous or malicious, but not every heck-barred claim will be frivolous, and those that are not, that there's a real good-faith argument about whether the heck-bar applies, should not result in a strike, because it's a personal. Ginsburg But here it was the identical claim, right? There's nothing different. It's the second. They were slightly different claims. One focused on sentencing. The other, I think, also did raise the sentencing issue, but was focused on the prosecution and other issues involving the conviction. There's no question that there was considerable overlap, and there's also, I think, very little question that a court could have determined that at least the second one had been frivolous or malicious, but the Court did not do that. And everyone here agrees that 1915g needs to be evaluated, whether a strike is to be imposed, based on what the Court actually did, not what the Court could have done. I want to talk again a little bit about dismissals based on lack of exhaustion, which I think is an important example. As this Court noted in Woodford, it is – it was a central aspect of the PLRA, and yet conspicuously it's not included in the statute. It's not included in 1915g as a reason for imposing a strike. Nonetheless, on the other side's view, any time that an exhaustion issue could be dealt with on a motion-to-dismiss basis, it is going to result in a strike, which we think is anomalous, because it means in the circumstance in which the litigant exhibited candor and saved the judicial resources because the exhaustion problem was apparent from the face of the complaint, that is going to result in a strike. But in the vast majority of the other instances, exhaustion is not treated as a strike precisely because it is the type of procedural defect that does not implicate the merits of the claim, does not suggest any abuse of the courts. And we think it is an anomalous result of the other side's interpretation that that sort of dismissal is going to result in a sanction. Roberts' Why do you assume that a procedural defect doesn't tax the resources of the Court? It's not just the Court, it's the entire judicial system and the, you know, as I said, the service of process and all these other things. Why is that? I mean, it's the issue that you and Justice Ginsburg were talking about. If it's been identified that you've got a heck problem, and then you go ahead and you file the same thing, that's still a procedural defect. But it is a – I don't know if you want to say abusive, but it is the filing of a case that does not have the prospect of success at that time as filed. And it's from the point of view of the burdens on the system, I don't see why it shouldn't be regarded as a strike under 1915. I think it would be possible to have that view. I don't disagree with the proposition that it is taxing the Court's resources despite being a procedural defect. But when you look at the structure of the statute, it does not seem like that is what happened under 1915G, because, again, dismissals based on jurisdictional problems, or including sovereign immunity, are going to have the exact same feature, except that they will almost certainly not be curable in a way that failure to exhaust or a heck bar might well be. Congress did not impose a strike for those actions. So it does not appear that Congress thought the thing that is sanction-worthy that is going to potentially restrict a prisoner's future access to the Court is just judicial resources and can't succeed as filed. Instead, 1915G is targeting something more specific. It's targeting actions that are meritless on their face or are frivolous or malicious, which are significant standards that you can't do. Roberts. It may seem odd, but you have frivolous cases that are dismissed as frivolous without prejudice, right? I mean, it's — if you've got the — you're suing the wrong person. You thought Tom Smith was the guard that did this and it was Fred Jones instead. It could be characterized as frivolous because there's no possibility of success because the guy you're naming was, you know, off that day. And, yes, you — and let you — you would probably want that to be without prejudice because the suit's, you know, completely compelling as long as you get the right guy. I agree with that. So the dichotomy that — I don't know if there's three of them, what it's called, I believe it's a dichotomy between frivolous and failure to state a claim that you're trying to draw is not as airtight as you suggest. I don't think that's right because a dismissal based on lack of jurisdiction, for example, courts have recognized that that could be dismissed as frivolous because you could be making an argument that is just so — has no basis in the law that it deserves that sanction of being something that is an abuse of the courts over and above filing an action that can't succeed because it's been filed in the wrong place. So the frivolous and malicious provide courts with an opportunity to recognize even though this procedural defect goes above and beyond because there's been an abuse of the court process in a way that is not true of a normal — normal assertion of this court has jurisdiction when it, in fact, does not. We think that analogy applies perfectly to a heck dismissal or dismissal for lack of exhaustion. Thank you, counsel. Mr. Olson. Mr. Chief Justice, and may it please the Court, the text, structure, and history of the Prison Litigation Reform Act all support giving was dismissed its ordinary meaning in the three strikes provision. The text is straightforward. If a case was dismissed for failure to state a claim, it meets the statutory definition regardless of whether that dismissal was with or without prejudice because in either circumstance that case was dismissed, which is what the statute looks to. Second, the structure of the act backs this ordinary meaning. The Prison Litigation Reform Act uses the phrase failure to state a claim several times in its structure, in its text. Petitioners' proposed interpretation requires this court to give that phrase one meaning in 1915G, the three strikes provision, and a different meaning in the rest of the act. That violates basic rules of statutory interpretation. In addition, the three strikes use of the categories frivolous and malicious alongside the category fails to state a claim, counsels, as a colleague we with Chief Justice, the Chief Justice illustrates that these provisions should be given similar scope. Frivolous and malicious dismissals can be with and without prejudice. The same scope should apply here. What results is an easily administrable rule to see what happened rather than look and analyze the consequences. Finally, the history of the act supports this reading. This court in the Nitschke opinion in 1989 held that although it might be an appealing proposition, having sua sponte dismissals for failure to state a claim was inconsistent with the Informa Popper statute in effect at that time. Congress responded to that suggestion in the act a few years later, adding the opportunity for dismissals, sua sponte dismissals, and using the same language to describe dismissals as strikes. Suppose a prisoner files a suit and the district judge, instead of granting leave to amend, dismisses without prejudice. Prisoner corrects the error, fixes the defect, files a suit and prevails. Not only is it sufficient to state a claim, prevails in the case. You would still say that that prisoner has a strike, even though they won the case. Well, if it was, we look at the statutory text, which says an action was dismissed. And if the first action was dismissed, even though they won a subsequent case on the same set of operative facts, it would be a different action. So that first strike would count. Of course. Doesn't that strike you as odd? You have a winning case and you get a strike under the Peel article? Well, no, it doesn't because Congress is looking for an administrable rule. And you look at the action itself and as the discussion earlier, Justice Kavanaugh illustrates, rule 15 requires leave to amend to be freely given where justice requires, whether or not it's as of right. And I think what we see in the district of Colorado certainly is a conversation back and forth between the prisoner and the court before that dismissal occurs. So there. I guess that raises another question, which is, I alluded to earlier, I don't know that that practice is uniform. In fact, I'm pretty sure it's not uniform. So a lot of district judges will grant leave to amend freely, but a number of others for a lot of reasons, clearing the docket and otherwise will dismiss without prejudice. And yet those two things, which are functionally identical for the prisoner will be treated differently in terms of the strikes under your view. Is that right? Yes. In that circumstance, does that make sense to treat those two functionally identical things from the prisoner's perspective differently? It does under the text of the statute, which says, which asks the courts to look at what happened to the action. And if there is a clear rule from this court that says a dismissal with and without prejudice falls under the statute, then courts can adjust their behavior accordingly if they're concerned about giving the strike. Well, suppose we find the statutory language at least ambiguous, and then do you have a response to Justice Kavanaugh's question? Well, a clear rule on this will help courts adjust their behavior. So regardless of whether the text, the statute is ambiguous or not. But secondly, I think given Rule 15, given the focus on amendment and fixing complaints rather than just dismissing them, I think a rule from this court and the ample tools that we have for courts to fix, to find out if there's a way to state a claim before dismissal will not lead to unjust results. In fact, most circuits have the rule that we advocate here in effect. And why wouldn't it lead to an unjust result? Even if a dismissal is made without prejudice and for preclusion purposes, it doesn't bar a subsequent action, if the prisoner has to pay, what, $400 up front, it's effectively preclusive because he can't bring the action. He hasn't got the money to do it. Well, three responses, Justice Ginsburg. First, it is a three-strikes provision, and prisoners, every prisoner gets three non-meritorious on-their-face dismissals before the three-strikes provision applies. Secondly, under either rule, there are going to be some prisoners who are not going to be able to, after having three strikes, come to court and seek redress without prepaying the filing fee. And third, I think there are, there's an exception in the statute for imminent bodily injury, imminent danger of bodily injury, excuse me, that allow for the extreme cases to come through. What Congress was trying to do with the Prison Litigation Reform Act was reduce the amount of prisoner litigation that was coming to the court. And they balanced, as the Chief Justice identified, the burdens that that prisoner litigation was putting on the courts with giving access to prisoners. They get three strikes. And again, these strikes occur only when it's non-meritorious on-their-face. If it goes to summary judgment, if they lose at trial, if it's dismissed for 12b1 rounds, it doesn't count as a strike. So only in this category of strikes do we see the dismissal count. And yes, in any bright-line rule, there will be some examples that we can think of that fall on the other side of the rule, that if we were crafting policy ourselves, we might say should be included in the policy. But what Congress did was put forth an easily administrable rule that says we look at what happened in the prior cases, and were those prior cases dismissed for failure to state a claim, not looking at whether there was with prejudice or without prejudice. And this makes sense when you also look at the structure of the Act, because the structure of the Act says, again, it uses failure to state a claim several times. And it says in the structure several times, you, district court, have the authority and in some cases the obligation to screen cases and dismiss them if they fail to state a claim. And then in 1915g, it says for those claims that were dismissed for failure to state a claim, those count as a strike. And having that phrase mean the same thing throughout the Act is very important  Sotomayor, you're factually incorrect about one thing. 1915g doesn't say failure, a dismissal of a complaint. It talks about the dismissal of an action. And I always understood the dismissal of a complaint with leave to refile is different than a dismissal of the action. That's correct, Justice Sotomayor. So in those cases where there's a failure to state a claim, but the court believes that there's the potential of a legitimate claim, it certainly has the right to dismiss the complaint, but with leave to refile. Correct. The statute focused on an action. Now, I think that was what Justice Kavanaugh was getting to, which is, and what your adversary is saying, that if a court erroneously, and courts do do that erroneously because one presumes if they say you can file a complaint without prejudice and dismisses the action, that they're really saying the same thing. We're dismissing with leave to appeal. I think that's your adversary's argument. And that's what you're not getting to, which is, why should we treat those differently? Treat the circumstance where there is a complaint dismissed, but not the action? Well, why don't we read a dismissal of the action without prejudice to be the functionally equivalent of dismissal of the complaint with leave to refile? Because that's what without prejudice means. Well, when we look at the text of the statute, it focuses on the action being dismissed. And when you look at what happens in the mine run of cases, these actions are dismissed. Typically, if it's dismissed without prejudice, a couple of cases that Petitioner cites have this exact fact pattern, where there's a dismissal without prejudice and 30 days or 60 days given to file an amended complaint. No amended complaint is filed. Then the action, so the complaint was dismissed, and after that failure, the action is dismissed, but it is still dismissed without prejudice. Kagan. I think, Mr. Olson, your answer suggests that there's a real reason why courts  to amend, on the one hand, or dismiss the entire action without prejudice on the other. And what people are suggesting to you is maybe there's not a reason. Maybe it just depends on the culture and practice of particular district courts. Maybe in some district courts, the incentives actually cut the other way. Some of my clerks who have clerked on the D.C. District Court suggested to me that the incentives all cut in favor of dismissing without prejudice rather than giving leave to amend because of the way they count their docket. So, if that's correct, if courts are doing this randomly or if some are subject to one set of incentives and others subject to an opposite set of incentives, but they're all trying to do the same thing, which is to deal with a complaint that has not pled sufficient facts. And telling the person, go do it again. Why should we treat those two cases differently for purposes of counting strikes? Because the Prison Litigation Reform Act did not remove that broad discretion that all district courts have that, as you say, manifests itself in some difference in practice throughout the country. But what it did do was put forth in its text an administrable rule that was easy for one district court to determine what another district court did. And that easily administrable rule uses the language, an action was dismissed for failure to state a claim, period. It does not say without prejudice. Yeah, and I think, you know, there is a statutory argument and we can talk about the statutory argument. I don't want to poo-poo that at all. It's important to go by statutory language. I just want to, if we think that the statute is ambiguous and allows for a result either way, why is your rule the better rule given that it seems to treat two very similar cases from two courts, where they're trying to do the same thing completely differently for purposes of the strike counting? It's a better rule because of its clarity and administrability. It allows for no uncertainty to determine what happened. And it honors the scope of the other dismissals, so frivolous and without prejudice, and there are many examples where there can be some cases where it seems unfair that that was applied, but it is an easily administrable rule. The other rule's easily administrable as well, though. Dismissal with prejudice. If it's a dismissal without saying anything more, or it says with prejudice, then that's the bright line. Well, it is administrable, but not in the broader context, as the Chief Justice was pointing to earlier. It would allow the same litigant to file very similar cases over and over again with no penalty, unless the court comes in, reviews what they've done, and says, okay, this rises to the level of being frivolous. No, it just has to be dismissed with prejudice. The, well sure, that would be the other way to address it. You don't have to label it frivolous. You can file, you get leave to amend, or it's dismissed without prejudice. It comes back, nope, dismissed again, this time with prejudice. But the problem with that approach is that the with prejudice, as Justice Ginsburg pointed out earlier, the preclusive effects are much, much greater than whether or not you have to pay your filing fee and installments. And with prejudice means that you cannot bring a case on those set of operative facts again. That's why district judges are going to be loath to do that right out of the box. Right, but that's why I think that that rule would lead to more challenges in the district court and require district courts to spend much more time before they dismiss it. Here, under this rule, where with and without prejudice count as strikes, a district court can give prisoners some back and forth and say, we haven't met, the prisoner has not met the required threshold, we're going to dismiss without prejudice. Meaning that prisoner can bring that claim again if they do it better and develop more facts. But there is some consequence, which is the strikes. So that's why we think it's the more administrable, better rule. Can I ask one related question, it's alluded to in footnote seven of the reply brief, which is, do you think the PLRA allows sui sponte dismissals without leave to amend? Well, as Mr. Burgess identified, I think the general practice is to give amendment where it is required. I don't know that there's been a case that tests that thesis to the point. The better rule, we believe, under Rule 15, is that if there's an effort to amend, it should be granted if justice so requires. But it is not, and in this case, for instance, the first two strikes. I think you're saying then the PLRA should not be read to override Rule 15. Correct, yes. I do want to turn a little bit to the structural argument here, which is that the statute uses the same language several times. And it would be very odd, as this Court just held in the Kochai's consultancy case, all but the most unusual circumstances require us to give the same meaning to the same phrase in the same statute. And we see that here and provide strong reasons for having the strikes with, account for those that are both with and without prejudice. And I guess I'd like to end by just saying that, as we've alluded to in this conversation, this statute has had real consequences for the number of frivolous lawsuits filed by prisoners. It has reduced them substantially, as the State's amicus brief points out. And the filter that the Prison Obligation Reform Act has been effective over the years in making sure that the frivolous claims are reduced. Now, the prisoner claims are still a substantial part of the docket of the Federal Courts, around 10% of all civil claims filed. And our respectful position is that the Court recognize the majority of the circuits who have held that failure to state a claim dismissals with and without prejudice should count as strikes under the Act. If there are no further questions, I'll yield the remainder of my time. Thank you, Counsel. General Rosen. Mr. Chief Justice, and may it please the Court. What I would like to do is that while we maintain that all the usual tools of statutory construction point to affirmance. I want to return just briefly to the plain text of the PLRA for the simple reason that it is both the most important, and we maintain it is alone in this case sufficient to resolve the case. We have a situation where we have an inmate in prison for felony sexual assault, who brought three actions during the period of 2013 and 2014, each of which was dismissed for failure to state a claim, which is one of the enumerated actions. And in section 1915G, the text of the statute says that if we have a prisoner who on three or more prior occasions, while incarcerated, brought an action or an appeal in the courts of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, they are barred. They are subject to the three strikes rule. So as in the Coleman case, we have a situation where it is literally what the words of the statute say. And as in Coleman, we are confronted with a question of whether the language should have an exception or should be construed to be read with things that are not actually in the text. Well, it's a little more ambiguous than that. Failure to state a claim can mean two different things. It can mean failure to state a claim with prejudice or failure to state a claim without prejudice. And the consequences of that distinction obviously are very significant. So I'm not sure. I understand your textual argument. I'm not sure that that's the end of the case. So respectfully, I might say I don't think it's that it can mean either. It can mean both, that the plain language encompasses both dismissals with prejudice and dismissals without prejudice. And indeed, in the Petitioner's reply brief, they acknowledged as much, that this language, failure to state a claim upon which relief may be granted or dismissal on that basis, encompasses both. Kagan.         Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. So you might say, what, there are two categories. And the categories are dismissals and dismissals without prejudice. And if somebody sometimes says dismissals with prejudice, they're just adding unnecessary words. Because if it was just a dismissal, if a court just dismisses. It's going to be a dismissal with prejudice. So the with prejudice part, is superfluous, you might say. And when Congress just says dismissals, all it's choosing to do is not inject a superfluity into the statutory language. Well, the word dismissal encompasses both. We know in this case there were three dismissals of the actions on the grounds that were enumerated. The question of whether Rule 41 should be read in, I would suggest, doesn't make sense for two reasons. One is that the, as a statutory interpretive tool, we have plain text. I maintain that it's not ambiguous. But even if one thought it was, I think we would look to Rule 12, which provides the same language, failure to state a claim on which relief can be granted. And it is understood that that can include with or without prejudice. I don't think there's any reason to go to the language of Rule 41, because its language dealing with what counts as an adjudication on the merits is not language in the statute. So I don't see that it actually provides interpretive benefit. And then secondly, is the statute against a backdrop of the way people use language. And here, the way people use language is that a dismissal on a 12b6 motion, a simple dismissal, is a dismissal with prejudice. And you don't have to say with prejudice. So Congress, responding and acting against that backdrop, says all we need to do is say dismissal to have a dismissal with prejudice, because there's really no such thing as a dismissal. You never have to use those three words together in the way courts operate. You don't have to, but you are permitted to do it either way, and they both count as 12b6 motions that are granted. And I think the backdrop, if we're really to look at the backdrop of what Congress was focused on, we should really look at this Court's decisions in the Nietzsche and the Denton cases, where the Court had said that a dismissal for — in Nietzsche said that a dismissal for frivolous grounds does not include the set of those that are dismissed for failure to state a claim, so Congress is partly responding to that. And then in Denton, the Court had said that a dismissal for frivolousness under the prior version of the language in the IFP statute had said it could be with or without prejudice. So Congress knew the background in using one of those enumerated grounds, at least, was with both. And as I mentioned to your friend on the other side, the list of terms you have there, frivolous, malicious, failure to state a claim, the first two are plainly pejorative. I mean, the system does impose filings that aren't meritorious, impose costs on the system. But at the same time, the words are of a different character. I mean, if you file — if your case is thrown out because it's frivolous or malicious, that's one thing. If it's thrown out because of a failure to state a claim, when you report that to your colleagues back at the firm, they're going to say, well, is it without prejudice or with? And if you say it's without prejudice, they're not going to think you're a bad lawyer. I mean, they're just going to think that you've got to refile after something else happens. Precisely. And so when Congress, in adding the language on failure to state a claim, was expanding the type of claims that judges would be positioned to dismiss under the PLRA, and was not saying they have to be those that are vexatious in some manner, they can be those that are simply deficient. And that takes me to, I think, what is an important point I do want to get to, is if we look at the dismissals in this case, two of them are heck dismissals. And there's a suggestion that these are without prejudice, as heck dismissals normally are in most circuits, because of their status. The inmate here, who, as I say, was in prison for a felony conviction on sexual assault, he files a lawsuit in 2013 against five judges, two prosecutors, and the claims are that he was deprived of proper bail, proper state protection, and he was denied a speedy trial, the sentence was no good, and that he was denied a — an appeal. And that's a heck dismissal. It's a failure to state a claim because no relief can be granted on that, nor is there any likelihood that in the future this prisoner is likely to be able to hear that, that is to say there's no indication that he has a habeas petition that's been ruled on favorably or the like. So it can be styled as a procedural issue, but for all practical purposes, it's likely to ever change, but it's without prejudice. And the consequence, and I think this goes to a question Justice Kavanaugh asked, is why would it be a better rule, I think he asked of my colleague from Colorado, why would it be a better rule is because if we say that ones without prejudice are not going to be strikes, that means, in effect, heck dismissals will not count as strikes and inmates may file an unlimited number, in terms of not paying a filing fee, an unlimited number of IFP actions without consequence. And common sense will tell you that instead of the statutory purpose, which is to have fewer but better claims, we will wind up with an unlimited number of heck-hours actions. So I suppose in that scenario, at some point, the filings would become malicious. At some point, there's obviously precedent from this Court in the In re Macdonald and subsequent cases where some of the excessive litigants have come to this Court and the Court has said enough and lower courts have done something similar, but those are really aberrations. Those are not the norm, and nor would we want the system to have to bear that. Sotomayor, the general system bears that anyway, given that at least your co-counsel or counsel on your side argue that courts are free to permit litigants to amend their complaints. Litigants can do exactly that. They can avoid the filing fee and they can avoid dismissal by continuously amending, and some courts permit it. At some point, they get tired and they dismiss with prejudice. That would happen the same with inappropriate heck dismissals. As Justice Ginsburg pointed out, you dismiss one, the Court tells you heck bars you, and you refile it again with no change, and the Court is going to dismiss it as frivolous. You may answer briefly. Thank you. Respectfully, the history since the PLRA was enacted shows otherwise. At its zenith, 25 percent of the civil docket of the Federal courts were prisoner filings, and it is now down to about 10 percent. It's still a very large number, approximately 29,000 a year ago, but it's from 25 percent to 10 percent, and in the majority of circuits, I think it's six of eight that have ruled on this, the rule is both with and without prejudice count. Thank you, General. Four minutes, Mr. Burgess. Thank you. I'd like to make a few quick points. First, Mr. Olson, a number of times in his presentation referred to 1915g, referring to dealing with actions that were dismissed as nonmeritorious on their face. They make the same point in their brief, but it is very odd to refer to a dismissal without prejudice that may be based on purely a procedural defect as suggesting the claim is nonmeritorious on its face. And I suggest the reason they need to characterize it that way is precisely along the lines that the Chief Justice alluded to. The other phrases in 1915g are referring to actions that are clearly abusive, malicious, or frivolous. So it does not fit with the structure of the statute to think that actions that are being dismissed without prejudice and that might be on a purely procedural ground should receive a sanction under 1915g. I'd also like to address the United States' argument about the literal text of the statute and the idea that, well, it just says failure to state a claim, we shouldn't be reading in another provision. But that doesn't take full account of the fact that this is a term of art. And this Court in Woodford, for example, where it was interpreting the phrase exhaust, the argument was made, well, that doesn't include proper exhaustion. And the Court said, nevertheless, exhaustion is a legal term. We know what it means, so it would have been redundant for Congress to have to say proper exhaustion. We think the same applies here in the particular context where you're dealing with what a court interprets a prior dismissal. And for that reason, we think the Coleman decision supports us, because Coleman, in addition to relying on the plain language, relied on the ordinary background principles of civil rules of procedure. And here, the ordinary background rule is that while Rule 12b, an authorization provision, allows for a dismissal with or without prejudice, when you are determining the impact of a dismissal after it has previously been entered, it is conclu – there's a conclusive presumption that it is with prejudice. So we think Congress would have understood it that way, and that fully explains the difference between why the phrase is being interpreted one way in 1915g as opposed to the screening provisions, which mirror 12b in authorizing dismissal. Another point I'd like to make is the – I didn't hear a good response to Justice Sotomayor's argument that there might be a good reason to treat differently actions that – instances in which a court allows amendment and then dismisses versus instances in which the court decides, well, I'm just going to dismiss this entire action without prejudice. And the other side's argument seems to rely on the notion that courts will, by and large, apply Rule 15 and allow multiple amendments. As I indicated before, it's not clear that that is a preferable system. I think it's also not clear that that is consistent with the text of the PLRA. When you look at the screening provisions, in particular 1915e and 1997e, they speak in terms of requiring the court to dismiss the action or the case. So the idea that they can cure the problem that their reading has by saying, well, courts are going to allow multiple amendments, you don't have to worry about instances in which there is a without prejudice dismissal, I don't think is consistent with how the Act works as a whole. The final point I'd like to make is that the other side alluded multiple times to the – how many prisoner suits there were and that they've decreased. As we noted in our reply brief, there's no indication that there is any different pattern in the Third or Fourth Circuit. The Fourth Circuit has had this rule for over a decade, and there's no indication that by adopting a clear rule that without prejudice dismissals do not qualify as strikes, that there's been any significant uptick in prisoner litigation. If the Court has no further questions, we urge you to reverse. Roberts. Thank you, counsel. The case is submitted.